Matthew J. Preusch (SBN 298144) (Designated Counsel for Service)
Khesraw Karmand (SBN 280272)
**KELLER ROHRBACK L.L.P.**
1129 State Street, Suite 8
Santa Barbara, CA 93101
Tel: (805) 456-1496
Fax: (805) 456-1497
mpreusch@kellerrohrback.com
kkarmand@kellerrohrback.com

Lynn Lincoln Sarko, *pro hac vice forthcoming*
Gretchen Freeman Cappio, *pro hac vice forthcoming*
Dean Kawamoto (SBN 232032)
Daniel P. Mensher, *pro hac vice forthcoming*
**KELLER ROHRBACK L.L.P.**
1201 Third Avenue, Suite 3200
Seattle, WA 98101-3052
Tel: (206) 623-1900
Fax: (206) 623-3384
lsarko@kellerrohrback.com
gcappio@kellerrohrback.com
dkawamoto@kellerrohrback.com
dmensher@kellerrohrback.com

*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION

| | |
|---|---|
| BRIAN COATS, CASSIE ERGA, and SHAWN GINN, on behalf of themselves and all other similarly situated,<br><br>       Plaintiffs,<br><br>  v.<br><br>LUMBER LIQUIDATORS, INC., a Delaware Corporation, LUMBER LIQUIDATORS LEASING, LLC, a Delaware Limited Liability Corporation, LUMBER LIQUIDATORS HOLDINGS, INC., a Delaware Corporation, LUMBER LIQUIDATORS SERVICES, LLC, a Delaware Limited Liability Corporation<br><br>       Defendants. | No.<br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Brian Coats, Cassie Erga, and Shawn Ginn, on behalf of themselves and all others similarly situated nationwide, hereby file this Class Action Complaint against Defendants, Lumber Liquidators, Inc., a Delaware corporation, Lumber Liquidators Leasing, LLC, a Delaware corporation, Lumber Liquidators Holdings, Inc., a Delaware corporation and Lumber Liquidators Services, LLC, a Delaware corporation (collectively referred to as "Defendants" or "Lumber Liquidators") for the purchase of wood laminate flooring containing excessive levels of formaldehyde, a known carcinogen. In support thereof, Plaintiffs state as follows:

## I.   INTRODUCTION

1.   Consumers who are in the fortunate position of finishing or refurbishing their homes are confronted with an overwhelming number of options for building materials.  Consumers put a premium on quality, durability, and, above all, safety, when they choose products to introduce and install in their home environments.  This is precisely what Plaintiffs Brian Coats, Cassie Erga, and Shawn Ginn, and putative Class members did when they purchased wood laminate flooring from Lumber Liquidators.

2.   Lumber Liquidators does not present itself in the marketplace as a run-of-the-mill flooring purveyor.  Rather, it goes out of its way, via ads on National Public Radio, other similar outlets, and its own website to appeal to environmentally- and health-conscious consumers with representations like this one:



3.   For example, Lumber Liquidators has advertised that its laminate products are a good choice for "busy" homes with children and pets, as shown in this video advertisement:



They also represent that their products are a healthy choice generally.  In another video, a customer explains that she chose Defendants' laminate flooring because it would be better for minimizing the symptoms of her Sjögren's syndrome, an immune system disorder.[2]  In other advertisements, Defendants ask consumers to "trust the people over two million people trust."[3]

4.      Contrary to its public image, however, Lumber Liquidators routinely sells products that are not only poor quality, they are dangerous.  Indeed, independent lab tests demonstrate that laminate flooring sold by Lumber Liquidators releases cancer-causing formaldehyde at levels far in excess of safe standards.

5.      Lumber Liquidators' customers who bought this product are forced to incur the financial consequences of their purchase of Defendants' toxic wood products ("Toxic Laminate Flooring").  They

---

[1]  YouTube, Laminate Flooring: Lumber Liquidators, https://www.youtube.com/watch?v=khO_a-5Qq9E (last visited Mar. 6, 2015) (uploaded Jan. 6, 2012).

[2]  YouTube, Lumber Liquidators, Laying It Forward: Dawn Gursin in Washington Township, MI, https://www.youtube.com/watch?v=B_C80INXLjk (last visited Mar. 6, 2015) (uploaded June 11, 2014).

[3]  60 Minutes, Lumber Liquidators Linked to Health and Safety Violations, http://www.cbs.com/shows/60_minutes/video/A3GckRjCT6fZltzjt0BH8GKM0nGZJ8cw/lumber-liquidators-linked-to-health-and-safety-violations/ (last visited Mar. 6, 2015).

are also facing years of uncertainty because they have inadvertently exposed themselves to a known toxin.  Will they or their loved ones suffer from cancer or other health problems caused by their in-home exposure to formaldehyde in the coming years?  Only time will tell, and Plaintiffs and others must live with that uncertainty.

6.      Defendants supervise and control the manufacturing, packaging, distributing, marketing and/or selling of laminate wood flooring products to consumers in California and across the United States.  Defendants' marketing, packaging, and websites explicitly represent that these laminate wood flooring products are safe, meet or exceed "the most stringent environmental and quality standards,"[4] and, among other laws, comply with strict formaldehyde emission standards promulgated by the California Air Resources Board ("CARB") and enumerated in California's Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products ("CARB Regulations"). Cal. Code Regs. tit. 17, §§ 93120-93120.12.

7.      Despite Defendants' express representations about the safety of its products and their compliance with the strictest environmental standards, Defendants have sold and continue to sell laminate wood flooring products to consumers in California and across the United States that emit formaldehyde gas at levels that exceed the limits set forth in the CARB standards.  Although Defendants tout their products as meeting the most stringent standards, they, in fact, do not.

8.      Defendants fail to disclose the unlawful level of formaldehyde emission to consumers, and misrepresent the quality, safety, and character of their laminate flooring products.  As a result, consumers across the United States are buying flooring products from Defendants that Defendants falsely say are safe.

9.      Exposure to formaldehyde is linked to increased risk of cancer of the nose and sinuses, nasopharyngeal and oropharyngeal cancer, lung cancer, and leukemia.  Formaldehyde also causes

---

[4] Lumber Liquidators, *Health and Safety*, http://www.lumberliquidators.com/sustainability/health-and-safety/?WT.ad=GLOBAL_FOOTER_HealthSafety (last visited Mar. 5, 2015).

burning eyes, nose and throat irritation, coughing, headaches, dizziness, joint pain and nausea. Formaldehyde has also been linked to the exacerbation of asthma in formaldehyde-sensitive individuals.

10.      Laminate wood flooring is generally composed of a base layer of pressed composite wood (particle board or medium-density fiberboard), which is a mixture of sawdust or wood particles bonded together with glue or resin, and a top layer which is usually a veneer or other material such as a photographic image or picture of wood, affixed as a decorative surface. The CARB Regulations categorize medium density fiberboard as either "MDF," which has a thickness of greater than 8 mm, or "Thin MDF," which has a thickness of 8mm or less.  Cal. Code Regs. tit. 17, § 93120.

11.      Inexpensive laminate wood flooring, often produced in China, can be a significant source of formaldehyde gas emissions because formaldehyde glues and resins are used to hold the pressed wood together.

12.      Defendants supervise and control the manufacturing of laminate wood flooring products from several manufacturing plants in China.  Defendants sell those laminate wood flooring products at Lumber Liquidators' 38 retail stores in California, and at stores across the country.  Defendants also sell those laminate wood flooring products to consumers nationwide through Lumber Liquidators' retail website, www.lumberliquidators.com, and through its toll free customer service telephone line, 1-800-HARDWOOD (1-800-427-3966).

13.      Plaintiffs seek to represent themselves and similarly-situated consumers in nationwide who purchased Defendants' laminate wood flooring products that were (1) labeled as CARB compliant, but were not in fact, CARB compliant, and (2) sold to consumers in the United States at any time from March 6, 2011 through the date of judgment herein .  Plaintiffs seek restitution of money they and the putative class spent on Defendants' flooring products, an injunction prohibiting Defendants' ongoing unlawful, unfair, and fraudulent business practices, as well as damages on behalf of themselves and the putative class.

## II.    JURISDICTION AND VENUE

14.    This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d), because Plaintiffs are citizens of California, New Mexico, and Washington, and Defendants are citizens of Delaware or Virginia; there are certainly 100 or more class members; and the aggregate amount in controversy will exceed $5,000,000.

15.    The Court has personal jurisdiction over Defendants because a substantial portion of the alleged wrongdoing occurred in California.  Defendants also have sufficient minimum contacts with California, including 38 retail outlets, and have otherwise intentionally availed themselves of the markets in California through the promotion, marketing, and sale of products sufficient to render the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

16.    Venue is proper in the Eastern District of California pursuant to 28 U.S.C. § 1391(b)(2) and (3) because a substantial part of the events or omissions giving rise to the claims at issue in this Complaint arose in this District, a substantial part of the property that is the subject of this action is situated in this District, and Defendants are subject to the Court's personal jurisdiction with respect to this action.

## III.    PARTIES

17.    Plaintiff Brian Coats is and at all relevant times was a citizen of California.  Plaintiff Coats purchased and used Defendants' laminate flooring for his personal use.

18.    Plaintiff Cassie Erga is and at all relevant time was a citizen of Washington State. Plaintiff Erga purchased and used Defendants' laminate flooring for her personal use.

19.    Plaintiff Shawn Ginn is and at all relevant time was a citizen of New Mexico.  Plaintiff Ginn purchased and used Defendants' laminate flooring for his personal use.

20.     Defendant, Lumber Liquidators, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.  Lumber Liquidators, Inc. is licensed and doing business in the States of California, Washington, and New Mexico.

21.     Defendant, Lumber Liquidators Leasing, LLC, is a Delaware Limited Liability Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

22.     Defendant, Lumber Liquidators Holdings, Inc. is a Delaware corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

23.     Defendant, Lumber Liquidators Services, LLC, is a Delaware Limited Liability Corporation with its principal place of business at 3000 John Deere Road, Toano, Virginia 23168.

## IV.     FACTUAL ALLEGATIONS

**A.     California's CARB Standard for Formaldehyde**

24.     On January 1, 1988, the State of California officially listed Formaldehyde (gas) as a chemical known to cause cancer.

25.     In 1992, CARB formally listed formaldehyde as a Toxic Air Contaminant in California with no safe level of exposure.

26.     CARB approved the Airborne Toxic Control Measure to Reduce Formaldehyde Emissions from Composite Wood Products in April 2007.  The formaldehyde emission standards became effective January 2009 and set decreasing limits in two Phases. Cal. Code Regs., tit. 17, § 93120.2(a).

27.     The CARB Regulations apply to composite wood ("laminate") products including flooring. Cal.Code.Regs., tit. 17, § 93120.2(a).

28.     The CARB Phase 1 Emission Standard for MDF, which was in effect from January 1, 2009 to December 31, 2010, limited formaldehyde emissions to .21 parts per million ("ppm").  The Phase 2 Emission Standard for MDF dictates that as of January 1, 2011, MDF flooring products such as those involved in this action that are sold in California must emit no more than 0.11 parts per million

("ppm") of formaldehyde.  The CARB Phase 1 Emission Standard for Thin MDF, which was in effect - from January 1, 2009 to December 31, 2011, limited formaldehyde emissions to .21 ppm.  The CARB Phase 2 Emission Standard for Thin MDF dictates that as of January 1, 2012, thin MDF flooring products such as those involved in this action that are sold in California must emit no more than 0.13 ppm of formaldehyde. Cal. Code Regs., fit. 17, § 93120.2(a).  Hereinafter, the formaldehyde emission standards for both MDF and Thin MDF will be referred to as the "CARB limit."

29.     In 2010, Congress passed and President Barack Obama signed into law the Formaldehyde Standards for Composite Wood Products Act, which adds a Title VI to the Toxic Substances Control Act (TSCA), 15 U.S.C. § 2697, and establishes limits for formaldehyde emissions from composite wood products.  The national emission standards in that law mirror the CARB limit.  On June 2013, the U.S. Environmental Protection Agency promulgated rules to implement those standards.  *See* Formaldehyde Emissions Standards for Composite Wood Products, 78 Fed. Reg. 34820 (June 10, 2013) (to be codified at 40 C.F.R. Part 770).

**B.     Defendants Misrepresent that their Laminate Flooring Meets the CARB Standards and is Safe**

30.     Despite unlawful levels of formaldehyde emissions from its laminate wood flooring products, Defendants misrepresent to consumers on their website, product packaging, and warranties that their laminate wood flooring products meet the CARB standards for formaldehyde emissions.

31.     During the Class Period, Defendants have manufactured, labeled and sold the laminate flooring that it affirmatively represents is compliant with "CARB regulations in the State of California."

32.     Defendants affirmatively represent that their products meet CARB standards *everywhere* they sell their products.  Defendants explicitly tell customers that their "commitment to quality and

safety extends to everywhere we do business.  We require that all of our suppliers comply with California's advanced environmental requirements, even for products sold outside California."[5]

33.     Defendants explicitly represent that they "regularly" test their own products to ensure they comply with the strictest standards, and routinely "send product out to an independent lab for additional testing to ensure" the products meet the stringent standards.

34.     In addition, the product packaging for Lumber Liquidators' laminate wood flooring states: "CARB…Phase 2 Compliant Formaldehyde."  On information and belief, this statement is presented on all Defendants' laminate flooring product packaging even though the flooring inside the packaging does not comply with CARB standards.

35.     Defendants' laminate wood flooring is not what it purports to be.  Despite its explicit representations to the contrary, Defendants' laminate wood flooring, in fact, contains dangerous levels of formaldehyde that exceed the CARB regulations and the standards promulgated in the TSCA and are hazardous to human health.

36.     Formaldehyde gas can cause cancer, asthma, chronic respiratory irritation and other ailments including skin and breathing problems.  The risk of these health problems is significantly greater for children.

37.     Formaldehyde is the sort of toxic substance to which people may be exposed without knowing they are at risk.  Day after day, week after week, month after month, Plaintiffs live in their homes, an enclosed place, while their flooring is emitting toxic, cancer-causing fumes.

38.     As such, the laminate flooring Defendants sold Plaintiffs and other customers poses great health risks.

---

[5] Lumber Liquidators, *Health and Safety*, http://www.lumberliquidators.com/sustainability/health-and-safety/?WT.ad=GLOBAL_FOOTER_HealthSafety (last visited Mar. 5, 2015).

39. Defendants' marketing materials for the laminate flooring contain false and misleading information relating to its compliance with California standards, which was designed to increase sales of the products at issue.

40. Defendants' marketing materials for the Toxic Laminate Flooring contain false and misleading information relating to the safety of their laminate flooring, which was designed to increase sales of the products at issue.

41. Defendants deceptively manufactured, labeled, and sold the laminate flooring. The Toxic Laminate Flooring, having no monetary value, is worthless.

42. Defendants materially misrepresent the safety of their laminate wood flooring products by advertising their flooring products as safe and compliant with the CARB limit when in fact they are not.

43. Defendants make material omissions by failing to tell consumers that Defendants' laminate flooring has unlawfully high levels of formaldehyde.

44. Plaintiffs and the Class have been damaged by Defendants' dangerous and deceptive Toxic Laminate Flooring.  Plaintiffs and the Class are entitled to a return of the full purchase price paid for Toxic Laminate Flooring and other damages to be proven at trial.

**C. Defendants Knowingly Misrepresented the Safety of their Laminate Wood Products**

45. On information and belief, at all times relevant to this action, Lumber Liquidators has knowingly misrepresented its laminate wood flooring products as CARB compliant and knowingly failed to disclose to consumers the unlawful levels of formaldehyde emissions from its laminate wood flooring products.

46. At the same time that Defendants represent in their public statements to consumers that the laminate wood products they sell are sourced from mills whose production methods are CARB compliant, and that the products conform to CARB's specified formaldehyde emission limits, Defendants have acknowledged in statements made to the Securities and Exchange Commission that,

"While our suppliers agree to operate in compliance with applicable laws and regulations, including those relating to environmental and labor practices, we do not control our suppliers.  Accordingly, we cannot guarantee that they comply with such laws and regulations or operate in a legal, ethical and responsible manner.  Violation of environmental, labor or other laws by our suppliers or their failure to operate in a legal, ethical and responsible manner, could…expose us to legal risks as a result of our purchase of product from non-compliant suppliers."  Lumber Liquidators February 19, 2014 10-K to the United States Securities and Exchange Commission at p. 14, http://investors.lumberliquidators.com/index.php?o=25&s=127.  In the same SEC filing, however, Lumber Liquidators admits that it oversees quality control in its mills in China: "We are able to set demanding specifications for product quality and our own quality control and assurance teams are on-site at the mills, coordinating inspection and assurance procedures."  Lumber Liquidators February 19, 2014 10-K to the United States Securities and Exchange Commission at p. 5.  Despite their stated concern that their suppliers might not comply with environmental regulations, Defendants have failed to sufficiently exercise their acknowledged quality control over those suppliers to ensure that they comply with CARB standards, and Defendants continue to sell to California consumers laminate wood flooring products that Defendants obtain from those suppliers.

47.     On June 20, 2013, Seeking Alpha, a news website with millions of viewers, published a lengthy article documenting high formaldehyde levels in Chinese-made laminate flooring sold by Lumber Liquidators.  The author of the article, Xuhua Zhou, retained a certified laboratory to test three samples of laminate flooring sold by Lumber Liquidators.  Zhou's article states, "The tested product, Mayflower 5/16" x 5" Bund Birch Engineered, emits a staggering three and half times over the government mandated maximum emission level.  The product is clearly not CARB compliant yet Lumber Liquidators tagged CARB compliance on the box."  Xuhua Zhou, *Illegal Products Could Spell Big Trouble At Lumber Liquidators*, SEEKING ALPHA (June 20, 2013, 2:33 PM ET),

http://seekingalpha.com/article/1513142-illegal-products-could-spell-big-trouble-at-lumber-liquidators (last visited Mar. 6, 2015).

48.     On information and belief, high formaldehyde content resins and glues are less expensive and dry more quickly than low formaldehyde glues and resins.  By using high formaldehyde content resins and glues rather than low formaldehyde content resins and glues, Lumber Liquidators' manufacturers are able to produce laminate wood flooring more quickly and at higher volumes thereby reducing manufacturing costs and generating greater profits for Lumber Liquidators.

49.     Numerous Lumber Liquidators customers have posted internet complaints on Defendants' website concerning formaldehyde emissions, including Deborah of North Fork, California who posted on the Consumer Affairs website on September 11, 2014:

> We spent thousands of dollars and went with the LL recommended professional installer... the product we were sold was supposedly Made in the USA--nope, China. One of my children cannot walk barefoot on the floor because he will blister from the formaldehyde content.  We saved for years for this floor, it will need to be replaced. Please RUN to another dealer.  This company does not care about the customer one bit. This has been a devastating blow to our family.[6]

50.     Based on publicly available information from lawsuits, articles, and blog posts, Defendants knew or should have known that their laminate wood flooring products were not compliant with CARB standards.  Despite this knowledge, Defendants failed to reformulate their flooring products so that they are CARB compliant or to disclose to consumers that these products emit unlawful levels of formaldehyde.  Instead, Defendants have sold and continue to sell laminate wood flooring products in California and other states that exceed the CARB limit and they have continually represented to consumers that those products are CARB compliant.

---

[6] Consumer Complaints & Reviews, http://www.Consumeraffairs.com/homeowners/lumber liquidators.html on December 2, 2014).

CLASS ACTION COMPLAINT - 12

1

**D.    Plaintiff Coats's Experience with Defendants' Laminate Flooring**

2

3    51.    Plaintiff Brian Coats is a resident of Placer County, California.  In January 2015, Plaintiff

4    Coats purchased roughly 1,000 square-feet of Defendants' 12mm Americas Mission Olive laminate

5    flooring in Defendants' Roseville store to install in his home where he lives with his wife, three

6    children, and pet dog.

7    52.    The product that Plaintiff Coats purchased was prominently labeled as compliant with

8    formaldehyde regulations, as shown on this photo:

9

10

11



12

13

14

15

16

17

18

19

20

21

22

23

24    53.    On information and belief, when he cut Defendants' laminate flooring with a table saw, it

25    emitted a large plume of noxious gas, which forced him out of the work area in his garage.  Plaintiff

26    Coats has worked with wood products many times in the past, but he had never experienced something

27    like that.

28

54.     Since Plaintiff Coats installed Defendants' product in his home, his wife has experienced increased symptoms related to her asthma.  Moreover, Plaintiff Coats's pet dog, who had never before has serious health issues, had a seizure.

55.     Plaintiff Coats has asked Defendants to refund his purchase of its product, but Defendants have refused, and have sought to falsely assure him that the product is safe.  He is concerned both with the health impact to him and his family, and the potential decrease in the value of his home caused by Defendants' Toxic Laminate Flooring.

**E.     Plaintiff Erga's Experience with Defendants' Laminate Flooring**

56.     Plaintiff Cassie Erga is a resident of Everett, Washington.  In June 2014, she and her husband purchased approximately 1,600 square feet of 12 mm Ispiri America's Mission Olive laminate flooring at the Mukilteo Lumber Liquidators for approximately $3,000.  The next month, she paid roughly $6,000 to have that flooring installed in her family's kitchen, bedrooms, bathrooms, and great room.

57.     Before installing Defendants' product, Plaintiff Erga's home was carpeted.  She and her husband chose Defendants' product because they were looking for flooring that would not aggravate her husband's asthma.  As shown in this picture of the packaging on the product that Plaintiff Erga purchased, pasted below,

1
2
3
4
5
6
7
8
9
10
11
12



Defendants represented that the product was compliant with air standards regulations and specifically for "formaldehyde."

58.    Since installing Defendants' product, Plaintiff Erga has experienced increased headaches. Her pet English Bulldog, which had previously been healthy, also suddenly died in November after exhibiting breathing difficulties.  The couple also have two daughters: a three-year-old and a six-year-old.

59.    Plaintiff Erga is worried about the health risks of Defendants' product, but she is also concerned that it has diminished the value of her home, which she and her husband plan to resell.  They installed Defendants' product in part to increase that resale value.

60.    Plaintiff Erga's husband has contacted Defendants, but Defendants' representatives assured them that the product in their homes was safe, and Defendants did not offer a refund or replacement.

**F.      Plaintiff Shawn Ginn's Experience with Defendants' Laminate Flooring**

61.      Shawn Ginn is a resident of Albuquerque, New Mexico and a law enforcement officer in a neighboring community.  In December 2014, he bought 45 boxes of 12 mm Dream Home St. James Meade's Ranch laminate flooring at the Lumber Liquidators store in Albuquerque for $2,214.61.

62.      On information and belief, the laminate flooring Plaintiff Ginn purchased was manufactured in the same facilities, using the same materials, and by the same processes as other laminate flooring sold by Defendants that reportedly has unsafe and non-compliant levels of formaldehyde emissions.

63.      Plaintiff Ginn installed Defendants' product while remodeling his home, where he lives with his wife and newborn baby.  Plaintiff Ginn detected a noxious odor when he used a table saw and other tools to cut Defendants' product before installing it.  Since installing that product, Plaintiff Ginn and his family have experienced new respiratory symptoms, such as difficulty breathing.

64.      Below is a picture of the packaging of Defendants' laminate flooring that Plaintiff Ginn purchased.  As shown in the picture below, Defendants represented that the product was compliant with California CARB standards for formaldehyde.



65.     Plaintiff Ginn is understandably concerned about the effects Defendants' product has had not only on him and his family's health, but on the value of his home.  Plaintiff Ginn reasonably believed when he purchased Defendants' product that it was safe and that it complied with all regulatory requirements.

## V.     CLASS ACTION ALLEGATIONS

66.     This matter is brought by Plaintiffs on behalf of themselves and those similarly situated, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3).

67.     The Class that Plaintiffs seek to represent is defined as follows:

Consumers nationwide who purchased Defendants' laminate wood flooring products that were (1) labeled as CARB compliant, but were not in fact, CARB compliant, and (2) sold to consumers in the United States at any time from March 6, 2011 through the date of judgment herein (the "Class").

68.     **Numerosity/Impracticability of Joinder:** The members of the Class are so numerous that joinder of all members would be impractical.  The proposed Class likely contains thousands of members.  The precise numbers of members can be ascertained through discovery, which will include Defendants' sale and other records.

69.     **Commonality and Predominance:** There are common questions of law and fact that predominate over any questions affecting only individual members of the Class.

70.     For Plaintiffs and the Class, the common legal and factual questions include, but are not limited to the following:

A.      Whether Defendants engaged in unlawful, unfair or deceptive business practices by failing to properly label its products it sold to consumers;

B.      Whether the products at issue were mislabeled as a matter of law and violated California CARB emissions standards and Formaldehyde Standards of Composite Wood Products in the TSCA;

C.      Whether Defendants made unlawful and misleading toxicity representations and warranties with respect to its products sold to consumers;

D.      Whether Defendants' advertisements and representations had the capacity to deceive reasonable consumers;

E.      Whether Defendants violated California, Washington, and/or New Mexico consumer protection statutes;

F.      Whether Defendants breached their implied warranty of merchantability;

G.      Whether Defendants breached their express warranties;

H.      Whether Defendants were negligent in their labeling and advertising of the Toxic Laminate Flooring;

I.      Whether Defendants unlawfully sold the Toxic Laminate Flooring in violation of the laws of California, New Mexico, Washington and/or the United States;

J.       Whether Defendants' unlawful, unfair and deceptive practices harmed Plaintiffs and the Class;

K.       Whether Plaintiffs and the Class have been damaged by the unlawful actions of the Defendants and the amount of damages to the Class;

L.       Whether Defendants were unjustly enriched by their deceptive practices;

M.       Whether punitive damages should be awarded; and

N.       Whether Defendants should be enjoined from continuing the conduct complained of herein.

71.     **Typicality:** The representative Plaintiffs' claims are typical of the claims of the members of the Class.  Plaintiffs and all the members of the Class have been injured by the same wrongful practices of Defendants.  Plaintiffs' claims arise from the same practices and course of conduct that give rise to the claims of the members of the Class and are based on the same legal theories.

72.     **Adequacy:** Plaintiffs are representatives who will fully and adequately assert and protect the interests of the Class, and have retained class counsel who are experienced and qualified in prosecuting class actions.  Neither Plaintiffs nor their attorneys have any interests contrary to or in conflict with the Class.

73.     **Superiority:** A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Class is economically unfeasible and procedurally impracticable.  While the aggregate damages sustained by the Class are likely in the millions of dollars, the individual damages incurred by each Class member are too small to warrant the expense of individual suits.  The likelihood of individual Class members prosecuting their own separate claims is remote, and even if every member of the Class could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.  Further, individual members of the Class do not have a significant interest in individually controlling the prosecution of separate actions, and individualized litigation would also result in varying,

CLASS ACTION COMPLAINT - 19

inconsistent, or contradictory judgments and would magnify the delay and expense to all of the parties and the court system because of multiple trials of the same factual and legal issues. Plaintiffs know of no difficulty to be encountered in the management of this action that would preclude its maintenance as a class action. In addition, Defendants have acted or refused to act on grounds generally applicable to the Class and, as such, final injunctive relief or corresponding declaratory relief with regard to the members of the Class as a whole is appropriate.

74. Plaintiffs do not anticipate any difficulty in the management of this litigation.

75. Defendants have, or have access to, address and/or other contact information for the members of the Class, which may be used for the purpose of providing notice of the pendency of this action.

## VI.   CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Breach of Contract

76. Plaintiffs repeat and reallege each and every allegation contained above as if it were fully set forth herein.

77. In order to purchase Defendants' laminate flooring, Plaintiffs and the Class entered into a contract with Defendants, whereby they would pay Defendants money and Defendants provided laminate flooring that they represented as being of the highest quality, and which met the most stringent environmental standards.

78. Defendants materially breached this contract by failing to provide a product that was of high quality or met the most stringent environmental standards, including the CARB Formaldehyde Standards. Plaintiffs and the Class fully performed their portion of the contract by paying Defendants the listed sale price for the laminate flooring.

79.     As a direct and proximate result of Defendants' misconduct and breach of contract, Plaintiffs and the Class suffered harm in the form of monies paid.  Plaintiffs and the Class did not receive the benefit of the bargain for which they contracted and paid money.

**SECOND CAUSE OF ACTION**
**Breach of Express Warranty**

80.     Plaintiffs repeat and reallege each and every allegation contained above as if it were fully set forth herein.

81.     Defendants' representations of fact and/or promises on their marketing material, website, product labels, and other material relating to their laminate flooring created express written warranties that the product would conform to Defendants' representation of fact and/or promises.

82.     The Defendants' description on the labeling of their Toxic Laminate Flooring that it complied with CARB and California emissions regulations became part of the basis of the bargain, creating express written warranties that the product purchased by Plaintiffs and the other Class Members would conform to Defendants' description and specification.  The Toxic Laminate Flooring purchased by Plaintiffs did not so conform.

83.     Defendants provided warranties that their Toxic Laminate Flooring were labeled in compliance with state law and were not mislabeled under state law.  Defendants breached these express written warranties.

84.     As a result of the foregoing, Plaintiffs and the other Class Members have suffered damages, in that the value of the product they purchased was less than warranted by Defendants.

85.     Defendants engaged in a scheme of offering the Toxic Laminate Flooring for sale to Plaintiffs and members of the Class by way of, *inter alia*, false and misleading product packaging and labeling.

86.     Plaintiffs and the Class were the intended beneficiaries of such representations and warranties.

87.     As a direct and proximate result of Defendants' false and misleading representations and warranties, Plaintiffs and Class suffered significant damages.

### THIRD CAUSE OF ACTION
### Breach of Implied Warranty of Merchantability

88.     Plaintiffs repeat and reallege each and every allegation contained above as if it were fully set forth herein.

89.     Implied in the purchase of the Toxic Laminate Flooring by Plaintiffs and the Class is the warranty that the purchased products are legal and can be lawfully sold and possessed.

90.     Defendants reasonably knew or should have known those Toxic Laminate Flooring were unlawful for sale pursuant to The Toxic Substance Control Act, 15 U.S.C, 2601, *et. seq*.

91.     When Defendants sold these products they impliedly warranted that the products were legal and could be lawfully possessed and/or sold and therefore, merchantable.

92.     No reasonable consumer would knowingly purchase a product that is illegal to own or possess.

93.     The purchased Toxic Laminate Flooring is unfit for the ordinary purpose for which it was intended.

94.     In fact, this Toxic Laminate Flooring is illegal, mislabeled, and economically worthless.

95.     As a result, Plaintiffs and the Class were injured through their purchase of unsuitable, useless, illegal and unsellable products.

96.     By reason of the foregoing, Plaintiffs and the Class were damaged at least in the amount they paid for Toxic Laminate Flooring.

### FOURTH CAUSE OF ACTION
### Breach of Implied Duty of Good Faith and Fair Dealing

97.     Plaintiffs repeat and reallege each and every allegation contained above as if it were fully set forth herein.

98.     In making representations of fact to Plaintiffs and the other Class members about their Toxic Laminate Flooring, Defendants failed to lawfully label or advertise their Toxic Laminate Flooring and violated their duties to disclose the material facts alleged above.  Among the direct and proximate causes of said failure to disclose were the negligence and carelessness of Defendants.

99.     Plaintiffs and the other Class members, as a direct and proximate cause of Defendants' breaches of their duties, reasonably relied upon such representations to their detriment.  By reason thereof, Plaintiffs and the other Class members have suffered damages.

### FIFTH CAUSE OF ACTION
### Negligence

100.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

101.    Plaintiffs and Class members bring a cause of action for negligence against Defendants.

102.    Defendants had a duty to exercise reasonable care in the design, formulation, manufacture, sale, promotion, supply and/or distribution of the laminate flooring, including the duty to assure the product is of the quality and character promoted.

103.    Defendants were negligent in the design, manufacture, testing, advertising, marketing, promoting, supply, and sale of its laminate flooring in that they:

A.     Misled Plaintiffs by suggesting that the flooring met CARB and other "stringent" environmental and quality standards;

B.     Negligently designed laminate flooring in a way that it knew or should have known would contained excessive and/or dangerous levels of formaldehyde;

C.     Recklessly, falsely, and/or deceptively represented or knowingly omitted, suppressed, or concealed  material facts regarding the quality of its flooirng, including the fact that it contained excessive and/or dangerous levels of formaldehyde;

D.      Were otherwise careless, negligence, grossly negligent, reckless, and acted with willful and wanton disregard for Plaintiffs' and Class members' rights and well-being.  As alleged above, Plaintiffs and the Class were injured by Defendants' unlawful actions and are entitled to recover an amount to be determined at trial due to the injuries and loss they suffered as a result of Defendants' negligence.

104.    Despite the fact that Defendants knew or should have known that the laminate flooring had excessive and/or dangerous levels of formaldehyde, they continued to market and sell the flooring to consumers, including Plaintiffs and Class members.  Defendants knew that consumers, including Plaintiffs and Class members, would suffer reasonably foreseeable injuries, including property damage, personal injury, emotional distress and unreasonable stress as a result of its failure to exercise reasonable care.

105.    Had Defendants told Plaintiffs they sold a defective product, Plaintiffs and Class members would never have purchased the laminate flooring, and would not have suffered the injuries listed above.

106.    As a direct and proximate result of Defendants' negligence, misrepresentations, and recklessness, Plaintiffs and Class members have suffered significant damages.

**SIXTH CAUSE OF ACTION**
**Negligent Misrepresentation**

107.    Plaintiffs repeats and realleges each and every allegation contained above as if it were fully set forth herein.

108.    Defendants made misrepresentations of material fact when they represented that their laminate flooring was of the highest quality and met the most stringent environmental standards, including the CARB Standard for formaldehyde.

109.    Upon information and belief, Defendants had no reasonable grounds for believing that representation to be true, as they alone knew their laminate flooring did not possess these characteristics.

Defendants knew or should have known that its products contained excessive and/or dangerous levels of formaldehyde.

110.    Defendants, as alleged above, made that representation with intent to induce Plaintiffs and the Class members' reliance on the fact misrepresented, by convincing them that Defendants' laminate flooring did not contain high, excessive, or dangerous levels of formaldehyde.

111.    Because only Defendants knew exactly how much formaldehyde was in their laminate flooring, Plaintiffs and the Class members were ignorant of the truth regarding and justifiably relied on Defendants' misrepresentations.

112.    As a result of Defendants' misrepresentation and Plaintiffs and Class members' justifiable reliance on it, Plaintiffs and Class Members have suffered damages.

**SEVENTH CAUSE OF ACTION**
**Unjust Enrichment**

113.    Plaintiffs repeats and realleges each and every allegation contained above as if it were fully set forth herein.

114.    As a result of Defendants' unlawful and deceptive actions described above, Defendants were enriched at the expense of Plaintiffs and the Class through the payment of the purchase price for the Toxic Laminate Flooring.

115.    Under the circumstances, it would be against equity and good conscience to permit Defendants to retain the ill-gotten benefits that they received from the Plaintiffs and the Class, in light of the fact that the Toxic Laminate Flooring purchased by Plaintiffs and the Class were illegal products and were not what Defendants represented them to be.  Thus, it would be unjust and inequitable for Defendants to retain the benefit without restitution to the Plaintiffs and the Class for the monies paid to Defendants for the Toxic Laminate Flooring.

**EIGHTH CAUSE OF ACTION**

**Violation of the Washington Consumer Protection Act ("CPA") (RCW §§ 19.86 *et seq.*)**
**Brought on Behalf of Plaintiff Erga and Washington Class members**

116.    Plaintiffs repeats and realleges each and every allegation contained above as if it were fully set forth herein.

117.    This claim arises under the Washington Consumer Protection Act, RCW § § 19.86, *et seq.* ("CPA").

118.    At all relevant times, Defendants engaged in "trade" and/or "commerce" within the meaning of RCW § 19.86.010.

119.    The CPA broadly prohibits unfair methods of competition and unfair or deceptive acts or practices in the conduct of trade or business.  RCW § 19.86.0120.

120.    Defendants made uniform representations that their laminate flooring was of a particular standard, quality, or grade when it was and is not, and that it would perform as represented when it did not.  As set forth above, Defendants made false and/or misleading statements regarding the safety, quality, and characteristics of their laminate flooring that, as set forth above, were unfair or deceptive, had and continue to have the capacity to deceive the public, cause injury to Washington Class members and were made in violation of the CPA.

121.    In their communications with and disclosures to Washington Class members, Defendants intentionally concealed and/or failed to disclose that their laminate flooring have a design and/or capacity defect and that the defects had the capacity to, and in fact did, make the laminate flooring dangerous, worthless, and not of the advertised quality.  These omissions were unfair or deceptive, had and continue to have the capacity to deceive the public, cause injury to Washington Class members, and were made in violation of the CPA.

122.    Defendants had exclusive knowledge that the laminate flooring had the defects set forth above, facts not known to Washington Class memebers and other members of the Class.  Defendants'

exclusive knowledge of these material facts gave rise to a duty to disclose such facts, which they failed to perform.

123.    The representations made by Defendants and the facts concealed and/or not disclosed by Defendants to Washington Class members are material facts that were likely to deceive reasonable consumers, and that a reasonable consumer would have relied on in deciding whether or not to use Defendants' laminate flooring.

124.    The representations made by Defendants and the facts concealed and/or not disclosed by Defendants detrimentally affected the public interest.  There is an inherent public interest in the truthful marketing and sales of products that operate as advertised.  Defendants' laminate flooring did not possess the advertised qualities and thus negatively affected the public interest.

125.    Washington Class members justifiably acted or relied to their detriment on Defendants' affirmative representations and the concealed and/or non-disclosed facts as evidenced by their purchase and/or use of the defective laminate flooring.

126.    Had Defendants disclosed all material information regarding their laminate flooring to the Washington Class members, they would not have purchased and used the laminate flooring.

127.    Defendants knew, or were reckless in not knowing, that their statement about their laminate flooring were false and/or misleading.

128.    By the conduct described herein, Defendants engaged in unfair methods of competition and/or unfair or deceptive act or practices in the conduct of business, trade, or commerce.

129.    As a direct and proximate result of Defendants' violations of the forgoing law, the Washington Class members have been injured.

130.    Washington Class members have been damaged and are entitled to all of the damages, remedies, fees, and costs available under the CPA.

131.    The Washington Plaintiff Erga and Class members will provide or already have provided any required notice to appropriate entities regarding Defendants' unfair and deceptive trade practices.

**NINTH CAUSE OF ACTION**
**Violations of California's Consumers Legal Remedy Act, Cal. Civ. Code §§ 1750, *et seq.***
**Brought on Behalf of Plaintiff Coats and California Class Members**

132.    Plaintiffs and Class members incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

133.    California's Consumer Legal Remedies Act, Cal. Civ. Code §§ 1750, *et seq*. makes it unlawful to engage in unfair methods of competition and unfair or deceptive acts or practices intended to result, or which results, in the sale or lease of goods or services to any consumer.

134.    Plaintiffs and the Class members were, and continue to be, at all times material to the Complaint, "consumers" and "persons" as defined by the Cal. Civ. Code § 1761.  Plaintiff Coats, as well as California Class members, purchased and/or paid for Defendants' laminate flooring for personal and/or family and/or household use.

135.    As alleged throughout this Complaint, Defendants engaged in unfair, deceptive, and/or unlawful marketing in violation of Civ. Code § 1770(a) by representing to Plaintiff Coats and California Class members that their laminate flooring was of high quality and met the strictest safety and environmental standards.  Defendants made uniform representations that their laminate flooring was of a particular standard, quality, or grade when it was not, and, as set forth above, made unfair, deceptive, and/or unlawful statements regarding the capacity and characteristics of their laminate flooring.

136.    Specifically, Defendants have violated the following proscribed practices pursuant to Cal. Civ. Code § 1770(a) with the purpose of inducing Plaintiff Coats and the California Class members to purchase and/or use the laminate flooring:

137.    § 1770(a)(5):  Defendants represented to Plaintiff Coats and the California Class members that their product had characteristics, uses, or benefits that it does not have.  Specifically, Defendants represented to Plaintiff Coats and the California Class members that their laminate flooring was of high quality and met the most stringent environmental and safety standards.  Defendants concealed and/or failed to disclose that the laminate flooring has design and/or capacity defects and that

CLASS ACTION COMPLAINT - 28

the defects had the capacity to, and did in fact, lead Plaintiff Coats and the California Class members to purchase worthless flooring and expose themselves to serious financial and health risks.

138.    § 1770(a)(7):  Defendants represented to Plaintiff Coats and the California Class members that the laminate flooring was of a particular standard, quality, or grade when it was of another.  In this regard, Defendants represented that their laminate flooring was safe and met the most stringent safety and environmental standards when, in fact, the flooring did not meet these standards and would and did expose Plaintiff Coats and the California Class members to significant financial and health risks.

139.    Defendants' concealment and misrepresentations regarding the quality and safety of the laminate flooring was a material omission/misstatement that would cause a consumer to believe, incorrectly, that Defendants' laminate flooring was of a high quality and was safe for use and installation in their homes.

140.    Plaintiff Coats was exposed to and/or relied upon Defendants' unfair, deceptive, and/or unlawful marketing practices.  The California Class was uniformly exposed to Defendants' material omissions/misstatements regarding the supposed qualities of the laminate flooring and whether the flooring was of high quality and met the strictest environmental and safety standards.

141.    Plaintiff Coats and the California Class members wasted considerable amounts of time and money, and are suffering unreasonable stress as a result of Defendants' unfair, deceptive, and/or unlawful marketing practices pursuant to Cal. Civ. Code § 1770(a), through the purchase of Defendants' laminate flooring that was unlawfully advertised and marketed in violation of Cal. Civ. Code § 1770(a).

142.    The conduct described herein by Defendants is continuing.  Plaintiff Coats will promptly demand the conduct cease in a Consumer Legal Remedies Act letter.  The conduct was done for profit as a deliberate corporate policy rather than an isolated incident, and was morally wrong, callous, and/or oppressive.

143.    As a result of Defendants' violations of the California's Consumer Legal Remedies Act, Plaintiff Coats seeks an order of this Court permanently enjoining Defendants from perpetrating its unfair, deceptive, and/or unlawful marketing practices.  If Defendants do not take action to cease its unfair, deceptive, and/or unlawful marketing practices within thirty (30) days of being served with her notice letter, Plaintiff Coats will seek leave to amend this Complaint to request, in addition to an order enjoining Defendants from continuing their unfair, deceptive, and/or unlawful practices, an order awarding, *inter alia*, Plaintiff Coats and the California Class members actual damages, restitution, attorneys' fees and costs, and for such other relief as set forth below.

144.    Plaintiffs reserve the right to amend this Complaint to seek punitive damages.

## TENTH CAUSE OF ACTION
### Violations of California's Unfair Competition Law Cal. Bus. & Prof. Code §§ 17200, *et seq.* Brought on Behalf of Plaintiff Coats and California Class Members

145.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

146.    California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, protects both consumers and competitors by promoting fair competition in commercial markets for goods and services.  California's Unfair Competition Law is interpreted broadly and provides a cause of action for any unlawful, unfair, or fraudulent business act or practice.  Any unlawful, unfair, or fraudulent business practice that causes injury to consumers falls within the ambit of California's Unfair Competition Law.

147.    Defendants engaged in substantial advertising and marketing of its laminate flooring products within the State of California.

148.    Because of Defendants' unlawful and unfair business practices, Plaintiff Coats and the California Class were misled into purchasing Defendants' laminate flooring.  Plaintiff Coats relied, to his detriment, on Defendants' false representations, detailed above, that Defendants' laminate flooring was of the high quality and safety as represented when it did not.  The California Class was uniformly exposed to Defendants' unlawful and unfair business practices.

CLASS ACTION COMPLAINT - 30

**ELEVENTH CAUSE OF ACTION**
**Violations of New Mexico's Unfair Practices Act ("UPA") N.M. Stat. § 57-12-1, *et seq.***
**Brought on Behalf of Plaintiff Ginn and the New Mexico Class**

149.    Plaintiffs incorporate by reference each and every prior and subsequent allegation of this Complaint as if fully restated here.

150.    Plaintiff Ginn and New Mexico Class members are "persons," as defined by the UPA.

151.    Plaintiff Ginn and New Mexico Class members have suffered actual harm from Defendants' unfair, deceptive, and/or unconscionable trade practices.

152.    When Plaintiff Ginn and New Mexico Class members purchased Defendants' laminate flooring they engaged in a consumer transaction, as defined by the UPA.

153.    The UPA prohibits "[u]nfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce." N.M. State § 57-12-3.

154.    Defendants made false and misleading statements in their advertisements, in their stores, and on their products about the quality, safety, and standards to which the laminate flooring conformed.

155.    Defendants had a duty to disclose material facts about the high levels of formaldehyde in their laminate flooring, and that the flooring did not, in fact, meet the CARB or TSCA standards for formaldehyde. Defendants failed to fulfill this duty by, instead, representing that their laminate flooring was of high quality and met the most stringent environmental and safety standards.

156.    Defendants knew or should have known that their representations about the quality and safety of their laminate flooring were false and/or misleading. And Defendants knew or should have known that they had misled consumers and should have disclosed to them that the laminate flooring contained excessive levels of formaldehyde, and did not comply with state or federal standards.

157.    Defendants' misrepresentations and omissions were made by Defendants in the regular course of their business and trade. Defendants made misrepresentations about the quality, safety, and environmental standards of their laminate flooring in advertising, sales offers, and on the product packaging itself.

CLASS ACTION COMPLAINT - 31

158.     Defendants' misrepresentations about the quality and safety of the laminate flooring were of the type which may mislead Plaintiff Ginn and New Mexico Class members.

159.     Defendants advertised their laminate flooring as being of high quality and that it met the most stringent standards for safety and the environment.  Defendants knew or should have known such statements were false and likely to mislead consumers, Plaintiff Ginn, and New Mexico Class members.

160.     The New Mexico Class was uniformly exposed to Defendants' misrepresentations and unfair trade practices.

### VII.     REQUEST FOR RELIEF

Plaintiffs, individually and on behalf of all others similarly situated, requests judgments against Defendants as follows:

A.       For an order certifying the Class and, under Federal Rules of Civil Procedure 23(b)(2) and 23(b)(3), and appointing Plaintiffs as representatives of the Class and appointing the lawyers and law firm representing Plaintiffs as counsel for the Class;

B.       Declaring Defendants' advertising false and misleading;

C.       Permanently enjoining Defendants from performing further unfair and unlawful acts as alleged herein;

D.       Ordering Defendants to pay for the cost of testing Plaintiffs' and the Class's homes for formaldehyde levels;

E.       For all recoverable compensatory, statutory, and other damages sustained by Plaintiffs and the Class, including disgorgement, unjust enrichment, and all other relief allowed under applicable law;

F.       Granting Plaintiffs and the Class awards of restitution and/or disgorgement of Defendants' profits from its unfair and unlawful marketing of its laminate flooring;

G.       For costs;

H.       For both pre-judgment and post-judgment interest on any amounts awarded;

I.       For appropriate injunctive relief;

J.       For treble damages insofar as they are allowed by applicable laws;

K.       For appropriate individual relief as request above;

L.       For payment of attorneys' fees and expert fees as may be allowable under applicable law; and

M.       For such other and further relief, including declaratory relief, as the Court may deem proper.

## VIII.   DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

DATED this 6th day of March, 2015.

KELLER ROHRBACK L.L.P.

By: /s/ Matthew J. Preusch
    Matthew J. Preusch (SBN 298144)
    Khesraw Karmand (SBN 280272)
    **KELLER ROHRBACK L.L.P.**
    1129 State Street, Suite 8
    Santa Barbara, CA 93101
    Tel: (805) 456-1496
    Fax: (805) 456-1497
    mpreusch@kellerrohrback.com
    kkarmand@kellerrohrback.com

    Lynn Lincoln Sarko, *pro hac vice forthcoming*
    Gretchen Freeman Cappio, *pro hac vice forthcoming*
    Dean Kawamoto (SBN 232032)
    Daniel P. Mensher, *pro hac vice forthcoming*
    **KELLER ROHRBACK L.L.P.**
    1201 Third Avenue, Suite 3200
    Seattle, WA 98101-3052
    Tel: (206) 623-1900
    Fax: (206) 623-3384
    lsarko@kellerrohrback.com
    gcappio@kellerrohrback.com
    dkawamoto@kellerrohrback.com
    dmensher@kellerrohrback.com

    ***Attorneys for Plaintiffs***

CLASS ACTION COMPLAINT - 34